IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SCOTT GREGORY LOGAN                                                    PLAINTIFF

v.                          Civil No.   3:22-cv-03023-TLB-MEF
                                        3:22-cv-03045-TLB-MEF

SERGEANT MICHAEL SOLICE;
SERGEANT LEOPARD;
SERGEANT MONTROSS;
LIEUTENANT CALLAS; and
NURSE PRACTITIONER BRIANA NEWCOMB,
Turn Key Medical                                                       DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Scott G. Logan ("Logan"), filed these consolidated civil rights actions pursuant to 42 U.S.C. § 1983.   Logan proceeds *in forma pauperis* and *pro se*.

Currently before the Court is the Motion for Summary Judgment filed by Separate Defendant Nurse Practitioner Briana Newcomb (ECF Nos. 38-40) and the Motion for Summary Judgment filed by Separate Defendants Sergeants Solice, Leopard, and Montross and Lieutenant Callas (hereinafter "the County Defendants") (ECF Nos. 41-43).   Logan filed a Response (ECF No. 47) to which the County Defendants replied (ECF No. 49).   The Motions are ready for decision.   Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making this Report and Recommendation on these Motions.

### I.        PROCEDURAL HISTORY

On May 16, 2022, Logan filed the lead case, 3:22-cv-03023, against the County Defendants.   Logan's claims against the County Defendants center on his being moved to a

different housing unit where he was almost immediately involved in an altercation.   Logan suffered physical injuries that required a trip to the hospital.   Additionally, Logan claims appropriate procedures were not utilized in the disciplinary hearing process.   (ECF No. 1, pp. 4-7).   The Complaint was served on the County Defendants, and they filed their Answer on July 7, 2022.   (ECF No. 9).   On July 8, 2022, an Initial Scheduling Order was entered.   (ECF No. 12).   On July 26, 2022, Logan filed a Motion to Amend the Complaint.   (ECF No. 13).   Logan sought leave to add "Mack" a staff nurse and Defendant Newcomb.   *Id.* at 1.   Logan stated he intended to assert a denial of medical care claim.   *Id.*   He indicated that he desired to be taken to the hospital.   *Id.* at 2.   Logan also asserted that another inmate was getting preferential treatment outside the facility while all his requests were denied.   *Id.*   Leave to file an Amended Complaint was granted on July 26, 2022.   (ECF No. 14).

In his Amended Complaint (ECF No. 15), Logan added only Defendant Newcomb, who is employed by Turn Key Medical.   Logan alleged he was denied medical care following the March 30, 2022, altercation and following a slip and fall in the shower on August 3, 2022.   This case was opened on May 16, 2022.   Since the August 2022 claims arose after the filing of the initial case, and should have been filed as a separate case, the claims were severed.   (ECF No. 16).   This resulted in the opening of *Logan v. Newcomb*, Case No. 3:22-cv-03045.   Defendant Newcomb later filed a Motion to Consolidate the cases.   (3:22-cv-03045; ECF No. 13).   The Motion was granted.   (3:22-cv-03045; ECF No. 15).

In the Amended Complaint, the only mention of the County Defendants is Logan's assertion that Defendants Solice and Callas were present during the "only face to face" contact he

had Newcomb. (ECF No. 15 at 9-10).    Logan asserts their presence violated HIPPA[1] and the Fourth Amendment.   *Id.*

## II.    BACKGROUND

At all times relevant to this action, Logan was a pretrial detainee in the Carroll County Detention Center ("CCDC").[2]   (ECF No. 1 at 2).   He had been at the CCDC since March 25, 2022.   (ECF No. 43-1 at 24).[3]   In the Complaint, Logan alleges that in early April of 2022 Defendant Leopard and another officer woke him up and asked if he wanted to be moved to E-pod or if he would have any problems with the inmates there.   (ECF No. 1 at 4).   Logan responded that he was unaware of any problems.   *Id.* at 5.   Logan alleges that within 90 seconds of being moved, he found himself in an altercation that left him with a cut above his left eye, a displaced nose, and an injury to his neck and shoulder area.   *Id.*

CCDC records indicate this altercation occurred on March 30, 2022.   (ECF No. 43-1 at 27-28).   Three inmates were involved in the altercation.   *Id.*    Logan was taken to the hospital. (ECF No. 1 at 5).

Records from Mercy Hospital indicate stitches were used to close the laceration above his eye.   (ECF No. 43-3 at 1).   Regarding his nose, the after-visit summary states as follows:

> Your nose appears to be bruised but not newly broken.   Your nose is crooked secondary to old injuries.   If you wish to have it checked and consider having it straightened you should contact the ear nose and throat specialist listed, at your earliest convenience.   Straightening would most likely be an outpatient surgery rather than an office procedure due to the age of the injury.   *Id.*

---

[1] The Health Insurance Portability and Accountability Act of 1996.
[2] Logan has since been released from custody.   (ECF No. 27).
[3] All citations to the summary judgment record are to the CM/ECF document and page number rather than the designation given to the documents by the parties.

3

A specialist was listed on the form.  *Id.*

It was suggested that Logan take ibuprofen or naproxen for pain and inflammation.  (ECF No. 43-3 at 1).  His stitches were to be removed in five to seven days.  *Id.*  He was also advised to put ice or a cold pack on his nose every one to two hours for the first three days, when he was awake, or until the swelling went down, and to sleep with his head slightly raised.  *Id.* at 3.  The final diagnoses were listed as facial laceration, contusion of nose, and strain of neck muscle.  *Id.* at 1.  X-rays of Logan's cervical spine were taken, but the results were not stated.  *Id.*  When he returned to the facility, Logan was prescribed ibuprofen as needed, twice a day, for seven days. (ECF No. 43-3 at 15).

Logan was placed on 23-hour lock-down.  (ECF No. 1 at 5).  As a result of the altercation, Logan and one other inmate were charged with disciplinary violations.  (ECF No. 43-1 at 28).  A written notice of disciplinary form indicates Logan was informed at 20:38 on March 30, 2022, that he was being charged with battery/fighting, horseplay or activity that causes any accidental injury, and conduct that interferes with jail operations.  *Id.* at 29.  In the area for the inmate's signature, it was noted: "Detainee Refused/c-38."  *Id.*  On April 2, 2022, an appeal was heard by Corporal Montrose.[4]  *Id.* at 30.  Logan appealed on the grounds that the disciplinary hearing was not held in a timely manner.  *Id.*  At the bottom of the first page of the form, the words "appeal to sergeant" are written and a check mark placed indicating "approved" followed by an illegible signature dated April 5, 2022.  *Id.* at 30.  The form next indicates it was appealed to a staff sergeant, it is signed by Defendant Solice the same day, and he approved the decision.  *Id.*

---

[4] The results of the disciplinary hearing are indicated as being 15 days of lock-down and 15 days loss of privileges; however, the County Defendants have not submitted any documentation indicating when the initial disciplinary hearing was held and who was present.

According to Logan, he was informed he had the option of "gathering" three witnesses who could validate his version of the events.   (ECF No. 1 at 6).   Logan says the two officers did not return until 36 hours later.   *Id.*   Logan objected because the 24-hour time had expired.   *Id.*   He was "forced" to enter a plea.   *Id.*   He was not given an opportunity to present witnesses.   *Id.*   Logan says he was never allowed to "make a written appeal."   *Id.*   His next hearing was "orchestrated" by Defendant Leopard.   *Id.*   Logan again objected due to the procedural irregularities but was "forced" to enter a plea.   *Id.*   Logan was taken back to his cell for about 10 to 15 minutes and then given his third hearing by Defendant Solace.   *Id.*   Logan was quickly sentenced to 15 days with seven days credited.   *Id.*

The following morning two officers removed Logan's mat from his cell between the hours of 8:00 a.m. and 10 p.m.   (ECF No. 1 at 6).   This practice continued for seven days.   *Id.*   Logan objected to this considering his neck and shoulder injuries and "broken nose."   *Id.* at 7.   In fact, Logan indicated the doctor recommended he see a specialist regarding his nose.   *Id.*   Logan complained that he was in severe pain.   *Id.*

On April 10, 2022, Logan submitted a grievance to the attention of the county sheriff stating that the disciplinary procedures in the handbook were not followed.   (ECF No. 43-1 at 32). He asked that the infractions be reviewed, and he be released from lock-down.   *Id.*   In response, he was told the sheriff was not involved in the grievance process.   *Id.*   The chain of command for appeals from grievances was listed as Staff Sergeant, Jail Commander, Jail Administrator, and Chief Deputy.   *Id.*   On May 5, 2022, Logan submitted a grievance to the attention of Captain Ingles.   *Id.* at 33.   The response was that the grievance did not comply with the proper protocol. *Id.*   He appealed saying CCDC officials had been wrong throughout his disciplinary process.   *Id.*

In response, Logan was advised he had filed a grievance on the same issue on April 10, 2022, and did not appeal the answer. *Id.* Additionally, it was pointed out that the grievance was filed "outside the eight hours allowed on filing a grievance." *Id.* Logan appealed a second time. *Id.* at 34. Logan stated he had appealed the lock-down sentence and been forced to make a plea. Additionally, he stated that they had taken his mat despite his documented injuries. *Id.* In response, he was told an extensive review had been conducted and "proper actions were taken with the Turnkey policies and detention center policies, and [his] previous lockdown." *Id.*

Logan's grievance continued onto another form and was given a separate grievance number. (ECF No. 43-1 at 35). He was initially told his grievance did not conform with protocol. *Id.* Defendant Callas responded to the first appeal and stated that while in custody, Logan's medical care provider was Turnkey. *Id.* Should Logan want medical attention, he was told to "go through our nurse as a medical request." *Id.* Logan was then told to refer to the grievance procedure. *Id.* Logan appealed a second time. *Id.* Logan was advised that after review it was determined both the CCDC and Turn Key's policies were followed. *Id.* at 36.

On May 11, 2022, Logan submitted a grievance stating he was being denied medical treatment. (ECF No. 43-1 at 38). He asserted that his injury had persisted, and the nurse lacked the equipment to analyze his condition. *Id.* Logan was told Turn Key was the medical provider and he must submit a medical request to be seen by medical staff. *Id.* Logan continued to submit grievances regarding the injury to his left shoulder and neck, suffering from chronic pain, requesting diet changes to improve his healing, asking to see a specialist, requesting an MRI, and requesting temporary medical leave. (*See e.g.,* ECF No. 43-1 at 39, 43-44, 47-50, 52-54, 91 &

99).[5]   In response, he was told that Turn Key made all treatment decisions and all decisions regarding necessary changes in diet.   *Id.*   Logan also objected to paying for medical treatment that he contended should be the obligation of the CCDC.   (*See e.g.,* ECF No. 43-1 at 94).

On August 3, 2022, Logan slipped and fell in the shower.   (ECF No. 43-3 at 25, 35).   He was taken to Mercy Hospital emergency room.   *Id.*   He was diagnosed with a traumatic injury to his head and an injury to his left shoulder.   *Id.*   X-rays of his shoulder showed no evidence of "acute displaced fracture or traumatic malalignment of the left shoulder" and "[m]ild degenerative changes of the AC joint."   *Id.* at 34.   Logan was placed in a "sling for comfort secondary to an AC joint injury."   *Id.* at 25.   He was told he could ice the injury and use Tylenol and ibuprofen as needed for the pain.   *Id.*   He was also informed that he may develop concussion-like symptoms, possibly including headache, difficulty thinking, nausea, vomiting, sleepiness, fatigue, or irritability.   *Id.*   It was suggested that Logan avoid any screen time.   *Id.*   In the area for review of symptoms, the record indicates: Positive for arthralgias."   *Id.* at 31.   Logan exhibited:

> [f]ull active and passive range of motion of he left shoulder, tenderness to the left paraspinous superior portion of the trapezius muscle with full neck range of motion, no cervical spine step-offs, patient is able [to] make okay sign, twist second and third digits, interosseous muscle strength is intact, grip strength, bicep, tricep and deltoid strength is 5/5 bilaterally, sensation is intact in median, ulnar and radial distribution bilaterally.   *Id.* at 33.

Logan also submitted multiple medical requests.[6]   On May 6, 2022, Logan submitted a request stating he was never informed about the x-ray results.   (ECF No. 43-2 at 1).   He also

---

[5] Logan also submitted grievances regarding the lack of dental care and medical requests about tooth pain.   (*See e.g.,* ECF No. 43-1 at 64-65 and ECF No. 43-2 at 59, 77).   He does not, however, assert a denial of dental care claim in either his original or amended complaints.

[6] The Court notes that the exhibits submitted with the summary judgment motions are not in any chronological order; thus, leaving the Court to piece through the exhibits looking for the relevant entries.

complained of continued pain and of numbness in his fingers.  *Id.*  He asked for a follow-up and not just a trip to the nurse.  *Id.*  In response, Logan was advised that the emergency room (ER) paperwork did not indicate a need for follow-up.  *Id.*  On May 7, 2022, Logan stated he had suffered a broken nose during the altercation and needed to see a specialist to have it reset.  *Id*. at 2.  In response, he was told the ER records indicated Logan's nose had previously been broken.  *Id.*  On May 8, 2022, Logan complained his pain and discomfort was becoming more severe.  *Id.* at 3.  On May 9, 2022, Logan refused sick-call and signed a waiver of treatment.  (*Id*. at 1; ECF No. 43-3 at 8).  That same day, Logan stated he did not need Tylenol or a sick call; he needed to be taken to the hospital for his follow-up.  *Id.* at 4.  He was again told the ER paperwork did not indicate the need for follow-up.  *Id.*

Over a period of months, Logan continued to submit requests regarding the amount of pain he was in, the need for a proper evaluation of his neck and shoulder injury, including an MRI, and for his broken nose to be reset.  (ECF No. 43-2 at 5, 8-10, 20, 23, 25, 29, 33, 35-36, 38-41, 43-46, 50-53, 62-64, 66, 68, 71, 75, 78, 80, 82, 84, 86, 92-93, 98, 100, 102, 104, 106, 109, 115, 117).  On several occasions, Logan requested a bottom rack and/or extra mat due to discomfort.  *Id*. at 13, 17, 27, 29.  Logan submitted requests for changes to his diet to increase the nutrients his body needed to heal.  *Id.* at 18-19, 21-22.  Logan also complained about his stress levels and the need to have his mental health medication changed.  *Id.* at 30, 34, 37, 45, 89, 111.

Defendant Newcomb indicates she is a nurse practitioner employed by Turn Key Health Clinics, LLC, as a provider at the CCDC.  (ECF No. 38-2 at 1).  She indicates she is familiar with Logan and provided "nursing services" to him.  *Id.*  Defendant Newcomb states Logan's complaint regarding shoulder and neck pain were evaluated multiple times, and he had

appointments via telemedicine with her.  *Id.* at 2.  Logan was treated with acetaminophen and

cold packs "which was appropriate and within the standard of care."  *Id.*

>    According to Defendant Newcomb:
>
>    AC joint injuries are separations of soft tissue or inflammations to the acromioclavicular joint.  This injury generally heals quickly in about one week but can take up to six weeks to heal.  Injuries such as these do not require treatment and simply heal on their own.  As such, Mr. Logan did not have any medical condition which required additional treatment beyond that which he was already receiving.  (ECF No. 38-2 at 2).

>    Defendant Newcomb noted that Logan had twice had off site x-rays of his shoulder and both sets "revealed no fractures, no dislocations, and no soft tissue damage."  (ECF No. 38-2 at 2).  While Logan was given a sling after his August 3 fall, Defendant Newcomb indicates it was for "comfort to an AC joint injury."  *Id.*

>    Defendant Newcomb indicates she informed Turn Key's medical director, Dr. Absalom Tilley, of Logan's condition, requests, and threats to file a lawsuit.  (ECF No. 38-2 at 3).  According to Defendant Newcomb, Dr. Tilley "confirmed to me that no further evaluation was necessary considering Mr. Logan's repeated normal x-ray results and prior evaluations by two independent, higher-level-of-care emergency physicians."  *Id.* [7]  For this reason, Logan's requests for repeat x-rays or an MRI were denied as not medically necessary.  *Id.*

>    Defendant Newcomb further states that Logan did not consistently wear his sling.  *Id.* Nurses reported to Defendant Newcomb that when they observed Logan in his environment, he appeared to have no physical deficits.  *Id.*  Defendant Newcomb opines that Logan suffered no

---

[7] This statement does not appear in the medical records and no affidavit was submitted by Dr. Tilley.

injury, harm, or worsening of his condition due to the care and treatment he received at the CCDC. *Id.* at 4.

### III.    LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."   *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).   A fact is "material" if it may "affect the outcome of the suit."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."   *Matsushita*, 475 U.S. at 586.   "They must show there is sufficient evidence to support a jury verdict in their favor."   *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).   "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."   *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.    DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law."   *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Defendants clearly acted under color of state law.   The sole question is whether the Constitution was violated.   Having narrowed the focus, the Court turns to an examination of the pending motions for summary judgment.

### A.    Defendant Newcomb's Motion for Summary Judgment (ECF No. 38)

Defendant Newcomb argues she is entitled to judgment in her favor on the following grounds: (1) she was not deliberately indifferent to Logan's serious medical needs; (2) Logan can produce no verifying medical evidence that any delay in his receipt of care adversely affected his prognosis; and (3) there is no basis for an official capacity claim.

#### 1.    Denial of Medical Care—Individual Capacity Claim

The Eighth Amendment's prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs.   *See e.g., Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012).   Although Logan was a pretrial detainee and his claim is brought under the Fourteenth Amendment, the Eighth Circuit has continually applied the Eighth Amendment's deliberate indifference standard to claims brought by pretrial detainees.   *See e.g., Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012).   To prevail on his claim, Logan must prove that Defendant Newcomb acted with deliberate indifference to his serious medical needs.   *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

11

The deliberate indifference standard includes "both an objective and a subjective component: '[Logan] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Logan must show he "had been diagnosed by a physician as requiring treatment" or had an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted). During the March 2022 altercation, Logan sustained a laceration above one of his eyes, a contusion to his nose, and his neck and shoulder were injured. The neck and shoulder injury continued to bother him for months and was re-injured when he fell in the shower. He was taken twice to the emergency room, treated with cold packs, pain medication, and anxiety medication. For the purposes of this Motion, the Court concludes that Logan suffered from one or more serious medical conditions.

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

Defendant Newcomb naturally contends she was not deliberately indifferent to Logan's serious medical needs. (ECF No. 38-2). She asserts that Logan was evaluated by nursing staff multiple times and had appointments via telemedicine with her. *Id.* at 2. Logan was treated with

12

Acetaminophen and cold packs which she states, "was appropriate and within the standard of care." *Id*. Defendant Newcomb asserts that Logan was simply not happy with his care and wanted a different course of treatment. *Id*.

Logan's response is a single unverified page. (ECF No. 47). He asserts he was not non-compliant with wearing his sling as Defendant Newcomb asserts. *Id*. Instead, he states he wore it faithfully for the 10 days he was in the medical pod. *Id*. When he was moved out of the pod by facility staff, the sling was taken away. *Id*. Finally, he asserts he was in fact diagnosed with muscle separation in his shoulder. *Id*.

While Logan was "evaluated" on multiple occasions by nursing staff as illustrated by the medical records, at most, the treatment consisted of an order for a cold pack for a 24-hour period or an over-the-counter pain reliever for a period of seven days. To receive further care, Logan had to be seen again and was charged for each visit. Defendant Newcomb, who was the only medical care provider Logan had access to, never personally examined him. Without access to other medical care providers, Logan cannot effectively raise a genuine issue of material fact as to whether Defendant Newcomb's treatment of him had a detrimental effect on his shoulder and neck injury.

Despite prisoners' limited access to health care, the Eighth Amendment deliberate indifference standard is a difficult one to meet. It "requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quotation omitted). In cases where some medical care is provided, a plaintiff "is entitled to prove his case by establishing the course of treatment, or lack thereof, so deviated from professional standards that

it amounted to deliberate indifference."  *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015)

(quotation omitted).   Moreover,

> [n]othing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment.   Prisoners do not have a constitutional right to any particular type of treatment.   Prison officials do not violate the Eighth Amendment when, in the exercise of their medical judgment, they refuse to implement a prisoner's requested course of treatment.

*Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).

This is precisely what occurred in the present case.   Defendant Newcomb found no

medical necessity for Logan to have an MRI or be seen by another outside doctor.   Logan

disagreed.   While Logan's AC joint injury may have taken longer to heal than the one to six

weeks' time frame suggested by Defendant Newcomb, Logan did, as indicated in the medical

records, show improvement over several months.   Logan's August 3, 2022, slip and fall further

delayed the healing process.   Logan simply has no right to specific medical care or treatment.[8]

On the record before the Court, no reasonable trier of fact could conclude that a genuine

issue of material fact exists as to whether Defendant Newcomb was deliberately indifferent to

Logan's serious medical needs.   This is not to say that defendants may always escape liability by

providing some measure of care.   Rather, the Court merely holds on the record before it that

Defendant Newcomb is entitled to summary judgment on the individual capacity claims against

her.

---

[8] Logan also alleges another inmate, who was not injured in the facility, was given preferential treatment over him, and taken outside the facility for medical care on multiple occasions.   This single allegation, without more, is clearly insufficient to state an Equal Protection Claim.   *See Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) ("To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all materials aspects").

### 2.     Denial of Medical Care—Official Capacity Claim

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity."   *McKay v. City of St. Louis*, 960 F.3d 1094, 1102 (8th Cir. 2020) (quotation omitted).   In this case, Carroll County contracted with Turn Key to fulfill a constitutional duty, the provision of medical care.   While Turn Key is a private corporation contracted to provide medical services for prisoners at the CCDC, a suit against Defendant Newcomb in her official capacity is the same as a suit against Turn Key.   *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable for its own unconstitutional policies").   To state a claim against Turn Key, Logan "must show that there was a policy, custom, or official action that inflicted an actionable injury."   *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).

In the area of Amended Complaint where Plaintiff was asked to describe the custom, policy, or widespread practice that be believes caused the violation of his constitutional rights, Logan simply responded: "Denial of Medical" and "8th Amendment violation."   (3:22-cv-03023, ECF No. 15 at 5) (3:22-cv-03045, ECF No. 2 at 5).

Logan has failed to sufficiently allege the existence of any policy, custom, or official action that contributed to the alleged denial of medical treatment.   Logan does not maintain that Defendant Newcomb was the final policymaker for the Turn Key.   Finally, Logan has not asserted any failure to train or supervise claim against Defendant Newcomb.   Defendant Newcomb is entitled to summary judgment on the official capacity claims.

**B.      The County Defendants' Motion for Summary Judgment (ECF No. 41)**

The first issue that must be addressed is whether the Amended Complaint (ECF No. 15) supercedes the original complaint.   The well-established rule is that "an amended complaint supercedes an original complaint and renders it without legal effect."   *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000).   Logan was advised of this rule in the Order granting his Motion to Amend.   (ECF No. 14).   The County Defendants rely on this and maintain the claims regarding his movement into another pod, the altercation, and his disciplinary procedures, are no longer at issue.   *Pro se* documents are, however, to be liberally construed.   *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*pro se* litigant's allegations are construed liberally).   It is clear when the two complaints are reviewed together that Logan intended for the Amended Complaint to supplement the original Complaint.   *See e.g., Kiir v. North Dakota Public Health*, 651 F. App'x 567, 568 (8th Cir. 2016) (amendment "intended to supplement, rather than supplant, the original complaint," should be read together with the original complaint as *pro se* plaintiff's complaint); *Cooper v. Schriro*, 189 F.3d 781, 783 (8th Cir. 1999) ("It seems clear, however, that Cooper intended to have the two complaints read together"); *Ford v. Donovan*, 891 F. Supp. 2d 60, 62 (D.D.C. 2012) ("Instead of superseding his original Complaint, as a typical Amended Complaint does, this later pleading supplements it.   Given his *pro se* status, the Court will treat the combined pleadings as one joint Complaint").   The County Defendants' Motion is, therefore, deemed to be a Motion for Partial Summary Judgment.

Logan asserts that both HIPPA and his constitutional rights were violated when Defendants Solice and Callas were present when he was being medically evaluated.   Defendants Solice and Callas have moved for summary judgment on the following grounds: (1) Logan had no expectation

16

of privacy during the medical examination; (2) Logan failed to exhaust his administrative remedies; (3) they are entitled to qualified immunity; and (4) there is no basis for an official capacity claim.

### 1. Right to Privacy—Defendants' Presence During Medical Examination

HIPPA does not expressly or impliedly create a private cause of action. *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) ("HIPPA does not create a private cause of action"). Thus, Logan's claims premised on violations of HIPPA fail as a matter of law.

The Supreme Court has recognized a constitutionally protected zone of privacy that extends to medical records and medical communications. *Whalen v. Roe*, 429 U.S. 589, 598-99 (1977) (zone of privacy which includes an interest in avoiding disclosure of personal matters); *Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001) (expectation of privacy in not having medical information shared with non-medical personnel without consent). The Eighth Circuit has said that "to violate the constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation . . ., or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." *Van Zee v. Hansen*, 630 F.3d 1126, 1128 (8th Cir. 2011) (quotation marks and citation omitted).[9]

In the context of incarcerated persons, it has been held that although "prisoners do not shed all constitutional rights at the prison gate, . . . lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). A constitutional

---

[9] In *Dillard v. O'Kelly*, 961 F.3d 1048, 1054 (8th Cir. 2020) (en banc), cert. denied, 141 S. Ct. 1071 (2021), a case outside the prison system, the Eighth Circuit repudiated broad readings of *Whalen*.

17

right to medical privacy has been held to exist within the prisons.   *See e.g., Doe v. Delie*, 257 F.3d 309, 317 (3d Cir. 2001).   The general right to privacy is, however, subject to broad exceptions for legitimate penological reasons.   *See e.g., Seaton v. Mayberg*, 610 F.3d 530, 535 (9th Cir. 2010); *Doe*, 257 F.3d at 311; *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999); *Tokar v. Armontrout*, 97 F.3d 1078, 1084 (8th Cir. 1996) ("no clearly established constitutional right to nondisclosure of HIV status").

The constitution does not require prison officials to leave an inmate unsupervised during a medical examination.   *See e.g., Lomon v. Beyers*, 2020 WL 7828766, *3 (D. Kansas Dec. 31, 2020) (no violation of constitutional right of privacy when jail officers attended medical examination); *Haid v. Cradduck*, Case No. 5:14-cv-05119, 2016 WL 3555032, *6 (W.D. Ark. June 24, 2016) ("In most instances, the constitution does not require a prison guard to leave an inmate unsupervised during a doctor's visit"); *Franklin v. McCaughtry*, 110 F. App'x 715, 719 (7th Cir. 2004) (unpublished) (rejecting prisoner's argument that receiving medical treatment in front of staff members was constitutionally offensive).   Clearly, prison officials have legitimate penological interests in ensuring the safety of medical personnel.   *Cf. United States v. Maddox*, 27 F.4th 668, 674 (8th Cir. 2022) (gunshot victim had no reasonable expectation of privacy in his hospital room; officer did not violate his Fourth Amendment rights by entering the room).

Defendants Solice and Callas are entitled to summary judgment on this claim.

## 2.      Exhaustion of Administrative Remedies

In their brief, the County Defendants argue Logan filed no grievance regarding the officers being present when Logan was seen by a health professional.   (ECF No. 42 at 7-8).   They maintain this is fatal to Logan's claim.   While the County Defendants have provided the Court

with copies of their grievance policy, and they argue an examination of all grievances (ECF No. 43-1 at 32-66) establishes Logan did not file a grievance, no affidavit of the record keeper is provided to establish these pages contain all grievances submitted by Logan.   For this reason, the Court will not further address the County Defendants' failure to exhaust argument.

### 3.      Qualified Immunity

Having found that the facts do not make out a constitutional violation, Defendants are entitled to qualified immunity.   *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).   Even if the Court had found a genuine issue of material fact existed as to whether there was a constitutional violation, Defendants Solice and Callas would be entitled to qualified immunity.

"The purpose of the doctrine of qualified immunity is to protect public officials called upon to perform discretionary tasks from personal liability for the good faith performance of these tasks. *Snyder v. Kurvers*, 767 F.2d 489, 497 (8th Cir. 1985); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law."   *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

Defendants Solice and Callas are entitled to qualified immunity unless Logan has (1) stated a claim for violation of his constitutional right to privacy and (2) that right was clearly established at the time of the alleged violation.   *Thurmond v. Andrews*, 972 F.3d 1007, 1011 (8th Cir. 2020). A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."   *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up and citation omitted).   "We do not require a case directly on point, but existing

19

precedent must have placed the statutory or constitutional question beyond debate." *Ashcraft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Eighth Circuit has cautioned against too broad or generalized interpretations of whether a right is clearly established, instead requiring "[a] more specific and particularized inquiry in order to assess clearly established law in the context of an assertion of qualified immunity." *Thurmond*, 972 F.3d at 1012.

There is no published United States Supreme Court or Eighth Circuit case indicating that corrections officers (of the same gender as the prisoner) being present during a medical examination constitutes a violation of the prisoner's right to privacy. In fact, as previously noted, *Dillard* calls into question the existence of any constitutional right to privacy. *Dillard*, 961 F.3d at 1054 ("However, even if the right is assumed to exist, in reviewing the denial of qualified immunity [*NASA v.*] *Nelson*, [562 U.S. 134 (2011)] raises an essential question: whether a right the Supreme Court has only assumed may exist, and this court has never held to be violated, can be a clearly established constitutional right"). In the absence of such precedent, Logan cannot show the violation of a clearly established right to privacy.

### 4.    Official Capacity Claims

The official capacity claims against Solice and Callas are treated as claims against Carroll County. *Crawford v. Van Buren Cty.*, 678 F.3d 666, 669 (8th Cir. 2012). Logan has not alleged any violation of an official policy or custom, or a deliberately indifferent failure to train and supervise. *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019). Further, having found that no individual Defendant violated Logan's right to privacy, the county cannot be held liable. *See e.g., Ivey v. Aundrain Cty., Mo.*, 968 F.3d 845, 851 (8th Cir. 2020).

## V.    CONCLUSION

For the reasons discussed above, the undersigned recommends that:

- Defendant Newcomb's Motion for Summary Judgment (ECF No. 38) be **GRANTED**, and she be dismissed as a Defendant; and,

- The County Defendants' Motion for Summary Judgment (ECF No. 41) on the right to privacy claim be **GRANTED.**

By separate Order the undersigned will authorize the County Defendants to file a supplemental motion for summary judgment on Logan's other claims against them.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 12th day of December 2023.

/s/ *Mark E. Ford*
_____
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE